IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DAVID STALL**, and<br>a **CLASS** of similarly-situated<br>persons,<br><br>     Plaintiffs,<br><br>v.<br><br>**SHERIFF ODDIE SHOUPE**<br>in his individual capacity,<br>**DONNA DANIELS**, in her<br>individual capacity,<br>**JUDGE SAM BENNINGFIELD,** in<br>his individual capacity, and<br>**WHITE COUNTY, TENNESSEE**,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. _____<br><br><br>COMPLAINT—CLASS ACTION<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT
## FOR EQUITABLE AND COMPENSATORY RELIEF

David Stall, files this action individually and on behalf of a class of

similarly-situated persons in accordance with 42 U.S.C. § 1983, Tennessee State

Law, and Rule 23 of the Federal Rules of Civil Procedure to vindicate his state

law rights, and his Constitutional Rights, including his Constitutional Rights

under the Fourteenth Amendment.

1

## PRELIMINARY STATEMENT

### 1.

The starting point for this lawsuit is the undeniable right granted to the people of the United States by our Constitution, to be free from undue and unnecessary government intrusion/coercion when making decisions about reproductive health and procreation. Said freedom, in the area of vasectomies and birth control/sterilization, is generally referred to as voluntary consent. Make no mistake, Defendant Sheriff Shoupe had the ability to procure voluntary consent from the human beings under his custody and control by simply providing those human beings with information about vasectomies and birth control/sterilization, and then simply telling said persons, such as Mr. Stall, "if after consideration of the information provided, if you want to undergo a vasectomy, let me know." Shoupe didn't do that; Shoupe didn't permit voluntary consent—consent free of governmental coercion—because Shoupe knew full well that the chance that a human being incarcerated for a misdemeanor would simply say, "Hey, I want a vasectomy while I am here," was extraordinarily unlikely.

2.

So Shoupe, wishing to reach his Eugenics goal, chose to offer the one thing that means the most to a human being who is incarcerated behind bars: Freedom. Offering freedom in exchange for a vasectomy is not only unnecessary—if the goal is to obtain true voluntary consent—it is also unconstitutional, as being impermissibly coercive in the area of Mr. Stall's constitutional right to be free of coercion while making decisions about his ability to procreate.

3.

Furthermore, any contention by Shoupe that he and his agents did not approve and promote this modern-day eugenics program is belied by the facts. A clear **45 days** (or more) before Defendant Benningfield entered an Order that permitted certain White County Jail inmates to reduce their sentence by thirty-days in exchange for vasectomies (for men) or birth control implants (for women), Shoupe had already condoned and approved the exchange of birth control implants for a thirty-day sentence reduction for at least one woman under his care and custody—and the implant was injected into this female's arm **45 days** before Defendant Benningfield's Order *at Shoupe's jail*.[1] On top of that,

_____

[1] In addition, even at this initial stage of this litigation, Plaintiff has already determined that a full ten days before Defendant Benningfield's Order was

the Order entered by Defendant Benningfield absolutely does not command any

government official, such as Shoupe, to promote the subject program; instead,

the Order simply says that certain persons who agree to a vasectomy, for

example, can receive a thirty-day jail sentence reduction. That fact highlights two

important points, inter alia:

1. Shoupe was not under court order to promote and facilitate this

    program *at his jail*; and

2. Shoupe could have easily told Benningfield that when Benningfield,

    himself, ordered a jail-time sentence, Judge Benningfield and his court

    deputies could enroll people into this "program" *at the court*, without

    the assistance of Shoupe's jail employees, mindful that Shoupe began

    the program a full *45 days* or more before the subject court order.

4.

Quite simply, the facts demonstrate a plausible (if not probable) claim that

Shoupe created this program, and at the very least, Shoupe condoned and

ratified this program, and as result, Mr. Stall's constitutional right to equal

protection of the law has been violated, along with numerous other human

---

issued, *at least* one other female (Ms. Christel Ward) received a Nexplanon
implant in exchange for the offer of a thirty-day reduction in jail time.

beings who elected to preserve their ability to procreate. Stated in another way, Mr. Stall (and many others) had the right to refuse a vasectomy, without being punished in the form of Shoupe denying Mr. Stall a thirty-day reduction in his sentence for refusing to have a vasectomy—while providing those who agreed to a vasectomy thirty-days off their misdemeanor sentence. This conduct is so patently unconstitutional, that one prominent Tennessee lawyer, former clerk for the Tennessee Supreme Court, has filed suit, asserting that his client's Equal Protection rights under the Constitution have been violated by both Benningfield and Shoupe.

## JURISDICTION AND VENUE

5.

Jurisdiction is proper under 28 U.S.C. **§** 1331 and 1343(a)(4), as well as under 42 U.S.C. § 1983. And Venue is proper under 28 U.S.C. **§** 1391(b) and on the supplemental jurisdiction of this Court to adjudicate claims arising under state law pursuant to 28 U.S.C. § 1367(a).

5

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 6.

Mr. Stall was a free citizen at the time he filed this Complaint and thus he had no mandate to exhaust any jail grievance procedure prior to filing this Complaint.

## THE PARTIES

### A. Mr. David Stall, Plaintiff

### 7.

Mr. Stall is a resident of Tennessee and competent to stand trial to defend all claims he has made against these Defendants.

### B. Sheriff Oddie Shoupe, Defendant

### 8.

At all times relevant to this Complaint, Defendant Oddie Shoupe was a United States citizen, a Tennessee resident, and the sworn Sheriff of the White County Sheriff's Office. In his capacity as Sheriff, Shoupe was the final policy maker for White County with respect to all health programs in which White County Jail inmates participated. Sheriff Shoupe ratified, approved, and implemented the policy of permitting a thirty-day reduction in jail time in

6

exchange for inmates under his custody and care undergoing either a vasectomy (for men), or Nexplanon birth-control implant (for women).

9.

At all times relevant, Shoupe had the independent authority to refuse, on behalf of the jail and the County, implementation of the thirty-day reduction program because the subject Court Order did not mandate Shoupe to implement that program. Shoupe received the subject Court Order because the White County Sheriff, Shoupe, is conspicuously carbon copied on the subject Court Order. (See Ex. 1.)

10.

At all relevant times to this Complaint, Defendant Shoupe was acting under the color of state law. At all relevant times, Defendant Shoupe was subject to the laws of the State of Tennessee and the Constitution of the United States. At all relevant times, Shoupe was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the White County Sheriff's Office. Mr. Stall is using both Tennessee state law and 42 U.S.C § 1983 as the vehicles to sue Shoupe in his individual capacity regarding both state and federal claims.

### C. Donna Daniels, Defendant

11.

At all times relevant to this Complaint, Defendant Donna Daniels was a United States citizen, a Tennessee resident, and the sworn Deputy of the White County Sheriff's Office. Daniels also ratified, approved, and implemented the policy of permitting a thirty-day reduction in jail time in exchange for inmates under her custody and care undergoing either a vasectomy (for men), or Nexplanon birth-control implant (for women).

12.

At all relevant times to this Complaint, Defendant Daniels was acting under the color of state law. At all relevant times, Defendant Daniels was subject to the laws of the State of Tennessee and the Constitution of the United States. At all relevant times, Daniels was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the White County Sheriff's Office. Mr. Stall is using both Tennessee state law and 42 U.S.C § 1983 as the vehicles to sue Daniels in her individual capacity regarding both state and federal claims.

### D. White County, Tennessee, Defendant

13.

White County is a political subdivision of the State of Tennessee and among its other functions operates and maintains a law enforcement agency, known as White County Sheriff's Office. White County has an obligation to ensure the constitutionality of all health programs in which inmates at White County Jail participate, and to achieve this objective, at all times relevant, White County established or delegated to Defendant Shoupe the responsibility as final policy maker for White County of ratifying, establishing and implementing policies, practices, procedures and customs regarding said health programs.

14.

White County does not have immunity for violating the civil rights of its citizens and has waived sovereign immunity for the acts and omissions of its employees arising out of, and in the course and scope of, their employment. At all times relevant, White County was acting under color of state common and statutory law. The current County executive, Denny Wayne Robinson, is the agent for service of process of this Complaint and Mr. Robinson can be served at 1 East Bockman Way (Courthouse), Room 205, Sparta, TN 38583.

### E.  Judge Sam Benningfield

15.

Judge Sam Benningfield was, at all times relevant, the Judge who entered the Order represented as Exhibit 1, and currently serves as a judge of White County General Sessions Court. Shoupe approached Benningfield about his already implemented jail program of providing a thirty-day reduction in jail time in exchange for White County inmates agreeing to participate in a form of sterilization whether by vasectomy or Nexplanon, *inter alia*. Shoupe requested Benningfield to enter an order judicially solidifying his on-going program and on May 15, 2017 Benningfield entered an order solidifying the program.

16.

At all relevant times to this Complaint, Defendant Benningfield was acting under the color of state law. At all relevant times, Defendant Benningfield was subject to the laws of the State of Tennessee and the Constitution of the United States. At all relevant times, Benningfield was responsible for knowing and acting in accordance with all policies, procedures, orders, special orders, general orders, guidelines and regulations of the White County Sheriff's Office. Mr. Stall is using both Tennessee state law and 42 U.S.C § 1983 as the vehicles to sue Benningfield in his individual capacity regarding both state and federal claims.

10

## RELEVANT FACTS

**A. Shoupe had knowledge that a Sheriff, in neighboring Putnam County, had implemented a program just like Shoupe's at the Putnam County Jail**

Prior to Shoupe condoning, promoting and implementing the exchange of Nexplanon implants and vasectomies for thirty-day reductions in jail time, he knew that Putnam County's sheriff had sanctioned Nexplanon implants and vasectomies in exchange for thirty-day reductions in jail time for the human beings under his custody and control at the Putnam County Jail.

17.

For example, in August of 2015, in Putnam County Jail, inmate Tonya Qualls was offered a thirty-day reduction in jail time in exchange for having a Nexplanon implant implanted in her body, and Qualls received the Nexplanon implant in order to receive said promised thirty-day reduction in jail time. Two years later, Ms. Qualls again received the Nexplanon implant in exchange for an offer of thirty-day sentence reduction — this time at White County Jail.

18.

The Putnam County Jail program of pressuring its inmates to undergo vasectomies (for men) and Nexplanon implants (for women, such as Ms. Qualls) in exchange for thirty-day reductions in their jail time had been ongoing for at least 1.5 years before January 1, 2017.

19.

Shoupe knew about Putnam County's Jail program of pressuring its inmates to undergo vasectomies in exchange for a thirty-day reduction in jail time, because Putnam County's Sheriff told Shoupe about the program prior to Shoupe pressuring male inmates (such as Mr. Stall) under his custody and care to undergo vasectomies in exchange for a thirty-day reduction in jail times.

20.

Regarding the Putnam County Jail program of pressuring inmates to undergo vasectomies in exchange for a thirty-day reduction in jail time, there was no Court order offering the program.

21.

Shoupe began his program of having male inmates under his care and custody pressured into undergoing vasectomies in exchange for thirty-day reductions in their jail time at least a full **45 days** before Judge Benningfield subject court order represented as Exhibit 1 to this Complaint.

**B. The Court Order**

22.

On May 15, 2017 Judge Sam Benningfield issued a Standing Order that state the following:

"For good cause shown including judicial economy and the administration of justice, it is ORDERED any White County inmate serving a sentence for the General Sessions Court who satisfactorily completes the State of Tennessee, Department of Health Neonatal Syndrome Education (NAS) Program be given two (2) days credit toward completion of his/her jail sentence. Any such female inmate who receives the free Nexplanon implant or any such male inmate who has the free vasectomy as a result thereof shall be given an additional thirty (30) days credit toward completion of his/her jail sentence."

## C. Defendant Shoupe's general authority regarding White County Jail and White County Sheriff's Office

23.

At all times relevant to this Complaint, Sheriff Shoupe was the Sheriff of White County Sheriff's Office.

24.

At all times relevant to this Complaint, Sheriff Shoupe oversaw the operations of the White County Jail.

25.

At all times relevant to this Complaint, there existed no higher-ranking employee who is employed by the White County Sheriff's Office than Sheriff Shoupe.

13

26.

At all times relevant to this Complaint, there existed no higher-ranking employee who is employed by the White County Jail than Sheriff Shoupe.

27.

At all times relevant to this Complaint, Sheriff Shoupe had the authority to discharge any employee from their employment with the White County Jail.

28.

At all times relevant to this Complaint, Sheriff Shoupe had the authority to discharge any employee from their employment with the White County Sheriff's Office.

**D. Defendant Shoupe requests Judge Benningfield file an Order to legitimatize his program**

29.

Ms. Christel Ward, a former inmate at White County Jail, had Nexplanon implanted in her arm on May 5, 2017 at White County Jail by White County Health Department official with Donna Daniels present.

30.

*The day, May 5, 2017 that Ms. Ward had Nexplanon placed in her arm represents a full ten days prior to Judge Benningfield's Order represented by Plaintiff's Exhibit 1.*

31.

Prior to Judge Benningfield's May 15, 2017 Order, Shoupe knew that inmates under his care and custody at White County Jail had agreed to vasectomies/Nexplanon injections in exchange for a thirty-day jail sentence reduction.

32.

Shoupe approached Benningfield long before Benningfield's May 15, 2017 order and requested Benningfield to enter an order based on the program he had already implemented within White County Jail, the same program that resulted in Ms. Ward getting the subject Nexplanon injected into her arm on May 5, 2017.

33.

Defendant Shoupe requested Judge Benningfield to establish a standing order regarding a thirty-day reduction in jail time in exchange for White County inmates subjecting themselves to a form of sterilization such as women implanting Nexplanon into their bodies and men subjecting themselves to vasectomies.

34.

White County Jail inmates, including Ms. Ward, had Nexplanon injected into their arms in exchange for a promised thirty-day jail time reduction prior to

Judge Benningfield's order –represented as Exhibit 1 to this Complaint—being filed on May 15, 2017.

35.

In his capacity as Sheriff, Shoupe was the final policy maker for White County with respect to all health programs in which White County Jail inmates participated.

36.

The Standing Order represented as Exhibit 1 to this Complaint does not mandate that Sheriff Shoupe request inmates under his custody, care, and control to permit a government official to perform a vasectomy on male inmates in exchange for a thirty-day reduction of their jail sentences.

37.

The Standing Order represented as Exhibit 1 to this Complaint does not mandate that Sheriff Shoupe tell inmates under his custody, care, and control that they should permit a government official to perform vasectomies in exchange for a thirty-day reduction of their jail sentences.

38.

Sheriff Shoupe had the independent authority to disapprove all promotion—in any manner—of inmates under his custody, care, and control

permitting a government official to perform vasectomies on male inmates in exchange for a thirty-day reduction in their jail sentences.

39.

Sheriff Shoupe ratified, approved, and implemented a jail policy of permitting a thirty-day reduction in jail time in exchange for inmates under his custody, care, and control undergoing either a vasectomy (for men), or birth-control implant (for women).

**E. Shoupe's Authority with respect to permitting employees of the White County Health Department to enter White County Jail**

40.

In order to receive a thirty-day reduction in a jail sentence, Plaintiff had to attend a class in which members from the White County Health Department made a presentation about vasectomies and "drug addicted babies," while Lieutenant Donna Daniels—a subordinate of Shoupe's—was present.

41.

At all times relevant, Shoupe had the authority to prevent any member from the White County Health Department from entering White County Jail.

Shoupe knowingly permitted members from White County Health Department to enter White County Jail to make a presentation, which included information about vasectomies and "drug addicted babies," to Mr. Stall and other inmates.

**F. Shoupe's implementation of his unconstitutional policy**

43.

Shoupe ordered his subordinate Donna Daniels to verbally encourage all men, including Mr. Stall, incarcerated at White County Jail to permit a government official to perform a vasectomy on them in exchange for a thirty-day reduced jail sentence.

44.

Donna Daniels, acting on Shoupe's command, approached the male "pods" where Mr. Stall was housed and actively encouraged Mr. Stall, and all other male inmates, to permit a government official to perform a vasectomy on them in exchange for a thirty-day reduction in her sentence.

45.

Mr. Stall and other male inmates who were encouraged to permit a government official to perform a vasectomy on them in exchange for a thirty-day reduced sentence, had to sign a "sign up" sheet prior to receiving a vasectomy.

46.

By Shoupe's order, Donna Daniels presented Shoupe with the sign-up sheet referred to in the preceding paragraph, that contained Mr. Stall, and Shoupe approved each person, along with Mr. Stall, whose name appeared on the signup sheet.

47.

After signing the sign-up sheet, Mr. Stall attended a Department of Health Neonatal Syndrome Education (NAS) Program presentation led by a government official from the White County Health Department, and simultaneously attended by Shoupe's subordinate, Donna Daniels.

48.

During the NAS Program, and in the presence of White County Health Department employees, Donna Daniels told Mr. Stall and other inmates present that they would receive a thirty-day jail sentence reduction if they got a free vasectomy to be performed by the White County Health Department.

49.

The White County Health Department employees presenting the NAS Program heard Donna Daniels tell the inmates present that they would receive a thirty-day sentence reduction if they received a free vasectomy from the White County Health Department, and these White County Health Department employees understood that inmates were being offered a thirty-day sentence reduction if they underwent a vasectomy performed by the White County Health Department.

50.

After attending the subject class about vasectomies and drug babies, Mr. Stall decided not to undergo a vasectomy and was informed as a result, that he would not receive a thirty-day sentence reduction on his jail time.

## G. Shoupe wanted everyone sterilized because he thinks all inmates will give birth to drug addicted babies

51.

Prior to Mr. Stall attending the Department of Health Neonatal Syndrome Education (NAS) Program presentation, led by a government official from the White County Health Department, Donna Daniels told Mr. Stall that the primary

reason that the White County Jail officials were pushing Mr. Stall and other to permit vasectomies was to stop babies from being born addicted to drugs.

52.

Shoupe never once attempted to identify White County Jail inmates with documented drug addiction problems as a specified group that should be targeted as persons who need to be sterilized.

53.

Shoupe never once ordered any of his subordinates to identify White County Jail inmates with documented drug addiction problems as a specified group that should be targeted as persons who need to be sterilized.

54.

Not one employee of White County, including any employee of White County Jail and White County Sheriff's Office, attempted to identify White County Jail inmates with documented drug addiction problems as a specified group that should be targeted as persons who need to be sterilized.

**H. Shoupe teams up with the White County Health Department to double down on his theory that all White County Jail inmates will eventually give birth to drug addicted babies**

55.

In order to approve employees of the White County Health Department entering his jail to present that Department of Health Neonatal Syndrome Education (NAS) Program to Mr. Stall and others—Shoupe first viewed the entire Department of Health Neonatal Syndrome Education (NAS) Program, and approved that program to be presented to Mr. Stall and others.

56.

Shoupe approved White County Department of Health officials' program titled the Department of Health Neonatal Syndrome Education (NAS) Program, and thus knew that NAS included a lot of information and graphics about babies born addicted to drugs and about the financial burden to the state of Tennessee to medically treat drug addicted babies.

57.

Mr. Stall, and other similarly situated male inmates, while participating in the Department of Health Neonatal Syndrome Education (NAS) Program, viewed lots of graphic images and other material regarding babies born addicted to drugs and was also told by White County Health Department Officials—on

top of being told by Donna Daniels—that the primary goal of Shoupe's jail

program is to prevent babies being born addicted to drugs. Mr. Stall was also

shown figures estimating the financial burden to the state of Tennessee to

medically treat drug addicted babies.

58.

Mr. Stall, while initially participating in the Department of Health

Neonatal Syndrome Education (NAS) Program, signed a signup sheet for the jail

and saw others who participated in said program sign the same sign-up sheet.

59.

Mr. Stall, while initially participating in the Department of Health

Neonatal Syndrome Education (NAS) Program, signed a signup sheet for the

Department of Health and saw others who participated in said program sign the

same sign-up sheet.

60.

Mr. Stall, while initially participating in the Department of Health

Neonatal Syndrome Education (NAS) Program, saw Shoupe's subordinate,

Donna Daniels, present during the entire time that Department of Health officials

made their presentation to Mr. Stall and other White County Jail inmates.

61.

After completing the Department of Health Neonatal Syndrome Education (NAS) Program, Mr. Stall decided not to get a vasectomy and this was told by Donna Daniels that he would not receive the thirty-day reduction in jail time.

62.

By preventing Mr. Stall from receiving his thirty-day jail-time reduction, Shoupe made it clear to Mr. Stall—and all other male inmates who refused to participate in the subject program—that each of them would have to spend thirty-days longer in jail because they would not agree to a vasectomy.

## I. CLASS ACTION ALLEGATIONS

63.

Plaintiffs bring this suit as a class action on behalf of themselves and all others similarly injured (the "Class") pursuant to Rules 23(a), 23(b)(2), and 23(b)(3).

### i. <u>Class Definition</u>

64.

Plaintiffs seek to represent the following class:

**All persons (1) who were free at the time of filing this action, (2) who were offered a thirty-day reduction in jail time in exchange for receiving a vasectomy, (3) who were incarcerated at White County Jail when said offer was made at any time during the period**

24

**beginning October 9, 2016 and ending July 27, 2017, and (4) who did
<u>not</u> sign up for an actual vasectomy.**

65.

Plaintiff reserves the right to amend the class definition if further

investigation and discovery demonstrates that the class definition should be

narrowed, expanded, or otherwise modified. Excluded from the Class are

governmental entities, Defendants, any entity in which Defendants have a

controlling interest, and Defendants' officers, directors, affiliates, legal

representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

Also excluded from the Class is any judge, justice, or judicial officer presiding

over this matter and the members of their immediate families and judicial staff.

66.

As a result of Defendants mandating that Plaintiff, and all other male

inmates who refused to receive a vasectomy, serve an additional thirty-days

longer in jail sentence than those inmates who signed up for an actual vasectomy

in exchange for a thirty-day reduction in their jail sentence, Defendants have

violated the Equal Protection rights of Plaintiff all other male inmates who

refused to receive a vasectomy under the U.S. Constitution. Plaintiff seeks

declaratory and injunctive relief to remedy Defendants' illegal and

unconstitutional actions, policies, and practices. As a result of Defendants coercing Plaintiff and members of the proposed Class into permitting vasectomies to be performed on their bodies by mandating that they serve an additional thirty-days longer jail sentence if they did not receive a vasectomy in exchange for a thirty-day reduction in their jail sentence, Defendants have violated the Substantive Due Process rights of Plaintiff and members of the proposed Class under the U.S. Constitution. On behalf of the Class, Plaintiff seeks declaratory and injunctive relief under Rule 23(b)(2) and monetary relief under Rule 23(b)(3) to remedy Defendants' illegal and unconstitutional actions, policies, and practices.

### ii.   <u>Rule 23(a) requirements are met for the proposed Class</u>

67.

The requirements of Rule 23(a) are satisfied by this class action.

#### a. Numerosity

68.

The information as to the size of the Class and the identity of the inmates who are in the Class is in the exclusive control of Defendants. On information and belief, the class encompasses at least 100 male inmates who would have otherwise qualified for the subject program due to misdemeanor jail sentences. The number

of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

### b. Commonality

69.

Questions of law and fact that are common to the entire Class predominate over individual questions because the actions of Defendants complained of herein were generally applicable to the entire class. The common answers that Plaintiff seeks are simple and will result in a common resolution for the Class. These legal and factual questions include, but are not limited to:

1. Whether requiring Plaintiff and other inmates who refused to receive a vasectomy to serve an additional thirty-day jail sentence because they did not agree to have a vasectomy violated their constitutional rights to equal protection under the law;

2. Whether requiring Plaintiff and other inmates who refused to receive a vasectomy to serve an additional thirty-day jail sentence because they did not agree to have a vasectomy violated their Substantive Due Process rights under the Fourteenth Amendment of the U.S. Constitution;

3. Whether requiring Plaintiff and other inmates who refused to receive a vasectomy to serve an additional thirty-day jail sentence because they did not agree to have a vasectomy violated their Procedural Due Process rights under the Fourteenth Amendment of the U.S. Constitution;

4. Whether requiring Plaintiff and other inmates who refused to receive a vasectomy to serve an additional thirty-day jail sentence because they did not agree to have a vasectomy violated their due process rights under the Tennessee Constitution;

5. Whether using a reduction in jail time as an incentive to undergo a vasectomy is unconstitutionally coercive under the Fourteenth Amendment of the U.S. Constitution and thus prohibited by law;

6. Whether using a reduction in jail time as an incentive to undergo a vasectomy is unconstitutionally coercive under the Tennessee Constitution and thus prohibited by law;

7. Whether using a reduction in jail time as an incentive to undergo a vasectomy is unconstitutionally intrusive into the fundamental right to privacy and autonomy regarding personal procreational decisions

guaranteed under the Tennessee Constitution and thus prohibited by law; and

8. Whether voluntary consent can be given in the context of being offered a reduction in jail time in exchange for agreeing to a vasectomy.

### c. Typicality

70.

Plaintiff's claims are typical of the members of the Class because Plaintiff and all Class members were qualified for the subject program, but did not sign up for the vasectomy and thus Plaintiff and all Class members were told that would not receive a thirty-day reduction in their jail time. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members, and are based on the same legal theories.

### d. Adequacy

71.

Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are contrary to or in conflict with those of the Class he seeks to represent.

72.

Plaintiff has retained competent counsel in both civil rights and class action litigation.

73.

Plaintiff's suit is financially supported by considerable philanthropic funding.

### iii.    Rule 23(b)(2) requirements are met for the proposed Class

74.

The requirements of Rule 23(b)(2) are satisfied by this class action.

75.

Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Based on the anterior fact preceding this paragraph, Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class members as a whole and certification of the Class under Rule 23(b)(2) proper.

### iv.    Rule 23(b)(3) requirements are met for the proposed Class

76.

The requirements of Rule 23(b)(3) are satisfied by this class action.

77.

Questions of law or fact common to Class members predominate over any questions affecting only individual members because, *inter alia*, (i) each member of the proposed Class was injured by the same Defendants under the same subject program, (ii) each member of the proposed Class was offered a thirty-day sentence reduction if he permitted a vasectomy to be performed on his body while incarcerated at White County Jail, (iii) each member of the proposed Class chose not to receive a vasectomy, (iv) each member of the proposed Class was told he would not receive a thirty-day sentence reduction if he did not permit a vasectomy to be performed on his body while incarcerated in White County Jail, and (v) each member of the proposed Class received did not receive a thirty-day sentence reduction because each member chose not to have a vasectomy.

78.

A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because the certification of the Class will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly injured, without sacrificing procedural fairness or bringing about other undesirable results, making certification of the Class under Rule 23(b)(3) proper.

79.

No one knows who funded the subject vasectomies and Nexplanon injections because each Defendant has publicly denied funding the program.

**COUNT I**

**VIOLATION OF THE FOURTEENTH AMENDMENT RIGHTS OF MR. STALL AND THE PROPOSED CLASS UNDER THE EQUAL PROTECTION CLAUSE UNDER 42 U.S.C. § 1983**
(*Against Shoupe*)

80.

Plaintiff incorporates paragraphs 1-79 as if each were set forth verbatim herein.

81.

Based on the incorporated facts to support this Count, Shoupe interfered with the fundamental right of Plaintiff and proposed Class members to have autonomy in their personal and private procreational decisions by offering thirty-day sentence reductions to similarly situated inmates who agreed to get vasectomies and denying thirty-day sentence reductions to Plaintiff and proposed Class members for the sole reason that they would not agree to get vasectomies. Shoupe thereby violated the rights of Plaintiff and proposed Class members to Equal Protection of the laws under the U.S. Constitution.

32

Consequently, Plaintiff is entitled to all monetary damages permissible under law.

## COUNT II

### VIOLATION OF THE FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS RIGHTS OF MR. STALL AND THE PROPOSED CLASS MEMBERS UNDER 42 U.S.C. § 1983
(*Against White County and Shoupe*)

82.

Plaintiff incorporates paragraphs 1-79 as if each were set forth verbatim herein.

83.

Based on the incorporated facts to support this Count II, Shoupe and White County violated Plaintiff's Substantive Due Process rights to be free of outrageous government conduct such as the disdained and internationally condemned Eugenics program that these Defendants subjected Mr. Stall to, in order to coerce Mr. Stall into sterilizing himself through a vasectomy. Consequently, Plaintiff is entitled to all monetary damages permissible under law.

33

## COUNT III

**VIOLATION OF MR. STALL AND THE PROPOSED CLASS MEMBERS'
FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS RIGHTS**
(*Against all Defendants*)

84.

Plaintiff incorporates paragraphs 1-79 as if each were set forth verbatim

herein.

85.

The Tennessee General Assembly has exclusive domain over establishing

the "sentencing ranges, classes of criminal offenses, and permissible

considerations for sentencing determinations, and all other matters related to

criminal sentencing."

86.

"No statute permits a judge to modify the length of a defendant's sentence

based on whether or not that defendant has agreed to [abandon] his or her

constitutional right to reproduction freedom."

87.

"Tennessee code Ann. § 40-35-113 sets forth several expressly defined

mitigating factors that a judge may consider when determining to reduce a

sentence," and whether a defendant agree to abandon his right to reproductive freedom is not one of those factors.

88.

"Tennessee code Ann. § 40-35-114 sets forth several expressly defined mitigating factors that a judge may consider when determining to reduce a sentence," and whether a defendant agree to abandon his right to reproductive freedom is not one of those factors.

89.

None of these Defendants had authority to reduce Plaintiff's, or any similarly injured inmate's, jail time in exchange for signing up for a vasectomy. Consequently, these Defendants are liable to Plaintiff and proposed Class members for violating their due process rights which are protected by the Fourteenth Amendment of the U.S. Constitution.

## COUNT IV

### REQUEST FOR DECLARATORY JUDGEMENT
*(Against Benningfield and Shoupe)*

90.

Plaintiff incorporates paragraphs 1-79 as if each were set forth verbatim herein.

91.

Based on the incorporated facts, this Court should grant equitable relief by declaring the subject program unlawful, as unconstitutional because the subject program violates the Due Process and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution. Such a declaration serves the interest of public and if not made, similarly situated persons to Plaintiff will continue to serve longer jail sentences just because they refused to abandon their right to reproductive freedom by agreeing to undergo a vasectomy in exchange for a thirty-day reduction in jail time.

92.

Based on the incorporated facts to support this Count, these Defendants have also violated the due process rights of Plaintiff and proposed Class members under Tenn. Const. art. I § 8 by depriving them of their fundamental liberty rights regarding their procreational autonomy by offering to alter their incarcerated status. The provisions of the Tennessee Constitution, including art. I § 8, protect, *inter alia*, an individual's right to be free from unlawful deprivation of his liberty interests in making inherently personal decisions regarding his procreational choices. By offering Plaintiffs and members of the proposed Class a thirty-day jail sentence reduction in exchange for sterilizing themselves with

36

vasectomies, and by threatening to withhold a thirty-day jail sentence reduction if Plaintiff and members of the proposed Class did not receive vasectomies, these Defendants systematically deprived Plaintiff and proposed Class members' of their rights to procreational autonomy and thereby violated Tenn. Const. art. I § 8.

93.

Based on the incorporated facts to support this Count, these Defendants have also violated the rights of Plaintiff and proposed Class members under Tenn. Const. art. I § 3 by interfering with their rights of conscience and privacy regarding their procreational autonomy. The provisions of the Tennessee Constitution, including art. I § 3, protect an individual's fundamental right to make inherently personal decisions, and to act on those decisions, without government interference. By offering Plaintiff and members of the proposed Class a thirty-day jail sentence reduction in exchange for sterilizing themselves with vasectomies, by threatening to withhold a thirty-day jail sentence reduction if Plaintiff and members of the proposed Class did not receive vasectomies, and by actually withholding a thirty-day jail sentence reduction if Plaintiff and members of the proposed Class did not agree to receive vasectomies, these

37

Defendants systematically interfered with Plaintiff and proposed Class members' rights to procreational autonomy and thereby violated Tenn. Const. art. I § 3.

## COUNT V

## PUNITIVE DAMAGES
(*Against Defendants Shoupe and Daniels, in their respective individual capacities*)

**Based on the facts alleged in this Complaint,** Plaintiff is entitled to punitive damages, under all applicable laws, because, *inter ali*a, Defendants Daniels and Shoupe acted with a willful and conscience indifference to the laws that protect the Constitutional rights of Mr. Stall and the proposed Class members.

## COUNT VI

## ATTORNEY FEES

**Based on the facts alleged in this Complaint,** Mr. Stall and proposed Class members are entitled to attorney fees, under all applicable laws.

**WHEREFORE**, Mr. Stall and proposed Class members pray this Court for the following:

(a) That process issue and service be had on each Defendant;

(b) That this Court certify the proposed Class pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure;

(c) That a jury trial be had on all issues so triable;

(d) That Plaintiff have Judgment against Defendants for compensatory damages;

(e) That Plaintiff recover all costs of this litigation;

(f) That Plaintiff be awarded all other expenses in an amount to be determined at trial, including attorney fees;

(g) That Plaintiff have Judgment against Defendants Shoupe and Daniels for punitive damages;

(h) That this Court grant the equitable and declaratory relief Plaintiff have requested; and

(i) That Plaintiff receive such other and further relief as this Court deems just and proper.

Respectfully submitted on this 9th day of October 2017,

By */s/ William H. Stover*
William H. Stover
TN Bar No. 020537
Stover Law Group
222 2nd Ave. North, Ste. 326
Nashville, Tennessee 37201
(615) 613-0541/(615) 613-0546 FAX
ws@wstoverlaw.com

By */s/ Mario B. Williams*
Mario B. Williams
GA Bar No. 235254
*Future Immediate Pro Hac Vice*

39

Nexus Caridades Attorneys, Inc.
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 654-0288 / (703) 935-2453 FAX
mwilliams@nexuscaridades.com